IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **WILMER WADE**, <br><br> Defendant. | Case No. 3:17-cr-32-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

Defendant Wilmer Wade is charged under a superseding indictment with one count of possession with intent to distribute and distribution of heroin within 1,000 feet of an elementary school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860. Through counsel, Mr. Wade moves to suppress evidence of controlled substances and cash allegedly found on his person and any statements that he allegedly made on the grounds that he was arrested without a lawful warrant. On December 5, 2017, the Court received argument and evidence on Defendant's motion and allowed the parties to submit additional post-hearing briefing and evidence, which they have done. This Order sets forth the Court's essential findings of fact and conclusions of law. For the reasons stated below, Defendant's motion to suppress is denied.

# FINDINGS OF FACT

## A. The November 1, 2016 Arrest

1. Mr. Wilmer Wade was arrested on November 1, 2016, in the northwest area of Portland, Oregon. He was charged in Multnomah County Circuit Court with Delivery of a Controlled Substance and other related charges. The state case was dismissed on the motion of the state prosecutor on February 22, 2017, when the United States elected to prosecute Mr. Wade on federal charges in the District of Oregon.

2. On November 1, 2016, Portland Police Officers Joshua Sparks and Branden Combs arrested Mr. Wade near the corner of NW Sixth Avenue and NW Flanders Street in downtown Portland, Oregon. This location is part of an area in downtown Portland known as "Old Town." Officers Sparks and Combs are part of the Portland Police Bureau's Street Crimes Unit.

3. Officers Sparks and Combs did not observe any criminal activity by Mr. Wade. According to the officers, NW Sixth Avenue is an extremely high vice area with open-air drug use and dealing and prostitution. It is often referred to as "Crack Alley." Both officers were in uniform and on foot patrol when they saw Mr. Wade standing near a vehicle, engaged in conversation with a woman. The officers recognized both Mr. Wade and the woman from prior contacts. Officer Sparks reminded Officer Combs that Mr. Wade had a warrant out for his arrest.

4. Officer Sparks testified that he may have learned from transit officer Aaron Dauchy that there was an outstanding warrant for the arrest of Mr. Wade, although Officer Sparks was not certain of either from whom he learned that information or when he learned it.

5. After the hearing held on December 5, 2017, the government contacted Portland Police Officer Aaron Dauchy, who was able to access his own radio call logs from October 2016. Officer Dauchy found three entries indicating that he ran a records check for Wilmer Wade on

October 3, October 5, and October 10, 2016. Officer Dauchy recalled that he had contact with a person in the days preceding October 3, 2016, who told Officer Dauchy that Mr. Wade had been seen in the area of Old Town and that there was a warrant for Mr. Wade's arrest. Officer Dauchy confirmed the arrest warrant on October 3 and again on October 5 and October 10, 2016.

      6.      Officer Dauchy works the transit corridor of Fifth and Sixth Avenues in Portland that run through Old Town north of Burnside Street. Officer Dauchy has regular contact with officers of the Street Crimes Unit who work in Old Town. Officer Dauchy recalls that he told Officers Sparks and Combs that there was a warrant for Mr. Wade's arrest, although, due to the passage of time, Officer Dauchy cannot say when he passed that information to Officers Sparks and Combs. Officer Dauchy explains, however, that it was after running Mr. Wade's information and before Mr. Wade's arrest on November 1, 2016.

      7.      After taking Mr. Wade into custody and placing him in handcuffs, Officer Sparks contacted dispatch to confirm the existence of an arrest warrant. Approximately two minutes after the initial stop, the dispatcher notified the officers by audio transmission that Mr. Wade had two outstanding warrants, one for post-prison violation and one for probation violation. Officer Combs testified that he did not begin his search of Mr. Wade's person until after the warrant was confirmed. Officer Combs found drugs and cash during his search of Mr. Wade's pockets. Officer Sparks did not observe the search conducted by Officer Combs, and neither confirmed nor contradicted Officer Combs's testimony.

      8.      The Portland Police Bureau's Directives Manual sets forth the Bureau's policy regarding arrests made pursuant to warrant. In relevant part, the Directives Manual, at Section 840.00 (Arrest Warrant Processing Responsibilities), states that the Bureau restricts warrant service to the following guidelines: "Members attempting service of a warrant will

verify its status, *prior to making an arrest*, by MDC, radio or telephone to MCSO warrants base. Verification can be made by members directly or through precinct/unit members. c. *After the warrant has been confirmed* and the member feels confident the checked subject is the person named on the warrant, the requesting member will complete the arrest procedure and transport the arrested subject to the appropriate booking facility." (emphasis added).

**B.  The Parole (Post-Prison Supervision) Warrant**

9. On November 23, 2015, Wilmer Wade entered a plea of "no contest" in Multnomah County Circuit Court case number 15CR41945 and was sentenced the same day. Multnomah County Circuit Judge Judith Matarazzo sentenced Mr. Wade to one year and a day in prison, but failed to pronounce a term of post-prison supervision. Two days later, on November 25, 2015, Judge Matarazzo issued an amended minute order reflecting a two-year term of post-prison supervision. On December 16, 2015, Judge Matarazzo issued the final judgment in the case, 15CR41945, which included a two-year term of post-prison supervision. Mr. Wade was not present in court on either November 25, 2015, or December 16, 2015, when Judge Matarazzo entered her order and final judgment that included the two-year term of post-prison supervision.

10. Mr. Wade originally did not challenge the December 16th order by Judge Matarazzo. He now claims, however, that the term of his post-prison supervision was rendered in error because he was not present on either November 25 or December 16, 2016, when that term was imposed. Because the parole warrant for his arrest was issued based on allegations that Mr. Wade was in violation of the terms of post-prison supervision, Mr. Wade argues that this arrest warrant was not valid.

PAGE 4 – OPINION AND ORDER

C. **The Probation Warrant**

11. On July 28, 2016, in Multnomah County Circuit Court case number 15CR39225, Parole Officer Charles Adler submitted a warrant request for the arrest of Mr. Wade. The following day, July 29, 2016, Multnomah County Circuit Judge Eric Bergstrom issued the requested warrant.

12. The Law Enforcement Data System ("LEDS") is the database that was used by dispatch when Officer Sparks confirmed Mr. Wade's warrants on November 1, 2016. The LEDS records show the following entry:

> WARRANT INFORMATION
>
> OFF/3599 DANGEROUS DRUGS OFN/DEL COCAINE
>
> DOW/2016/07/29 CRT/OR026025J - MULTNOMAH COUNTY CIRCUIT COUR
>
> WTP/FEL WNO/15CR39225 BAL/50000-00.

13. As explained by the government, this entry shows that Mr. Wade was subject to an arrest warrant in case number 15CR39225, entered July 29, 2016. This is the second warrant referred to by dispatch when Officer Sparks ran a records check on Mr. Wade on November 1, 2016. Although the date of "November 2, 2016" appears stamped on the face of the arrest warrant, the government explains that this merely reflects the date that it was filed with the court clerk's office after it was executed on November 1, 2016.

## CONCLUSIONS OF LAW

**A. The Parole (Post-Prison Supervision) Warrant Was Valid**

Mr. Wade argues that the Parole Warrant was not valid because he was not present on either November 25, 2015, or December 16, 2015, when Judge Matarazzo entered her order and final judgment that included the two-year term of post-prison supervision. Mr. Wade relies on the Oregon appellate decision in *State v. Herring*, 239 Or. App. 416 (2010). In that case, the

Oregon Court of Appeals invalidated the action of a sentencing court that increased the defendant's term of post-prison supervision from 36 months to 30 years on the grounds that the action was taken outside the presence of the defendant. In response, the government distinguishes *State v. Herring* by arguing that it involved a discretionary decision by the sentencing court. In contrast, the government notes that Oregon Administrative Rule ("OAR") 213-005-0002 requires the imposition of a mandatory term of post-prison supervision of two years for the crime category of Mr. Wade's conviction in Multnomah County Circuit Court case number 15CR41945, following his no contest plea. Thus, argues the government, because Judge Matarazzo merely imposed the required minimum term of post-prison supervision and had no discretion to impose anything less, the absence of Defendant and the denial of his opportunity to argue is insufficient to invalidate either the term of post-prison supervision imposed by Judge Matarazzo or, by extension, the parole warrant for Mr. Wade's arrest. *See United States v. Cofield*, 233 F3d 405, 406–07 (6th Cir. 2000) ("To the extent that the district court erred in its omission, the error was harmless, and was corrected later the same day when the written judgment and commitment order was filed in the district court. Unfortunately, such errors can easily be made in the confusion of a district court docket that will often bring many defendants before the court in succession. Allowing [defendant] to profit from this kind of mistake would itself be a serious error.") (internal citations omitted). Mr. Wade provides no Oregon appellate or Ninth Circuit authority to the contrary.

## B. The Probation Warrant Was Valid

Mr. Wade also was subject to a valid probation warrant entered by Multnomah County Circuit Judge Bergstrom on July 29, 2016. The only argument advanced by Mr. Wade to the contrary is that the probation warrant contains a date stamp by the court of November 2, 2016.

This, however, appears to be the date on which the probation warrant was filed with the clerk's office after it was executed on November 1, 2016.

### C. The Good Faith Exception Applies

The government also argues that Portland Police Officers believed in good faith that there was a valid arrest warrant for Mr. Wade before they arrested him. As explained by the government, the good faith exception to the exclusionary rule is applied in situations where a law enforcement officer has made a mistake but, because the mistake was in good faith, application of exclusionary rule would not have its intended deterrent effect. *Herring v. United States*, 555 U.S. 135 (2009). Mr. Wade argues that if this case had remained in State court and was decided under Oregon Supreme Court jurisprudence, after a court would find that no lawful warrant existed, the evidence would be suppressed because Oregon does not recognize a "good faith exception" to the exclusionary rule. *State v. Mituniewicz*, 186 Ore. App. 95, 102 (2003); *State v. Johnson*, 120 Or. App. 151, 156, (1993). The Ninth Circuit, however, has held: "Requiring federal district courts to look to state law when determining the admissibility of evidence obtained in accordance with federal law would hamper the enforcement of valid federal laws and undermine the policy favoring uniformity of federal evidentiary standards." *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1374 (9th Cir.1987). Accordingly, this Court will apply the law set forth in *Herring v. United States* as its progeny in the Ninth Circuit.

"When the officer executing an unconstitutional search acted in 'good faith,' or on 'objectively reasonable reliance,' the exclusionary rule does not apply." *United States v. Camou*, 773 F.3d 932, 944 (9th Cir. 2014) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). The government carries the "burden of demonstrating good faith." *Id*. (citing *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995)). The good faith test is objective. It asks

"whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Id*. (quoting *Herring*, 555 U.S. at 145).

In *Herring*, an officer, relying on the county clerk's assertion that a particular person had an active arrest warrant, arrested that person. It turned out that the clerk's assumption was based on a third party's negligence—another employee made a bookkeeping error that incorrectly identified the defendant as having an active warrant. As the Ninth Circuit explained in *Camou*, in *Herring* the Supreme Court applied the good faith exception by reasoning that the error at issue "was the result of isolated negligence attenuated from the arrest." *Camou*, 773 F.3d at 944 (quoting *Herring*, 555 U.S. at 144). In order "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. (quoting *Herring*, 555 U.S. at 144).

In *Camou*, a police officer arrested Camou and searched his cell phone more than an hour after the arrest. The Ninth Circuit concluded that this did not constitute a search incident to arrest. The court further concluded that the good faith exception did not apply. As the court reasoned, the governing law at the time was quite clear that a search must be contemporaneous with an arrest in order to qualify as a search incident to that arrest. The court distinguished *Herring* because in that case the officer himself was not negligent. Rather, the negligence was removed from the officer. The court noted that "[t]he Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights." *Id*. In *Camou*, the Ninth Circuit concluded that because the government failed to assert that the officer had relied on anything else in conducting his search, or that that reliance was reasonable, the government had not

established that a reasonably well-trained officer in that officer's position could have believed that the search was lawful. Id.

In *United States v. Song Ja Cha*, 597 F.3d 995 (2010), the Ninth Circuit addressed a claim that a search, undertaken pursuant to a valid warrant, was nonetheless unreasonably long. The court affirmed the suppression of evidence and concluded that *Herring* was not to the contrary. The court explained that "*Herring* only applies to isolated police negligence, [and] it does not bar suppression [where conduct is] deliberate, culpable, and systemic." *Song Ja Cha*, 597 F.3d at 1004. The court also distinguished between mistakes of fact and mistakes of law. *Herring* involved a mistake of fact. *Song Ja Cha*, however, involved a mistake of law—the officers did not realize that a seizure could last no longer than reasonably necessary. Mistakes of law, the court explained, "can be deterred more readily than mistakes of fact." *Id*. at 1005.

The primary purported mistake that Mr. Wade contends is that the warrant or warrants for his arrest were not, in fact, valid or entered in the LEDS database before the arrest. At least regarding the Parole (Post-Prison Supervision) Warrant, this issue is somewhat similar to what *Herring* dealt with—"isolated negligence attenuated from the arrest." The validity or invalidity of that warrant—based on the fact that Mr. Wade was in the courtroom when the post-prison supervision requirement was added, is wholly unrelated to what the officers knew and reasonably believed at the time they arrested Mr. Wade. The officers were told by a fellow officer that there was a warrant for Mr. Wade's arrest. In *Herring*, the Court found that the reasonableness of relying on such information was not affected by the fact that the underlying information itself was wrong, due to an error removed from the arresting officers.

It appears that it would be sufficient under Portland Police Bureau procedures for Officer Sparks and Officer Combs to have arrested Mr. Wade merely on the verbal representation from

PAGE 9 – OPINION AND ORDER

another officer, presumably Officer Dauchy, that an arrest warrant for Mr. Wade was outstanding. Thus, even if there were some legal or technical infirmity with the underlying warrant or warrants, the holding in *Herring* would preclude an order of suppression in this case.

## CONCLUSION

Defendant Wilmer Wade's Motion to Suppress Evidence and Statements (ECF 29) is DENIED for the reasons stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 11th day of December, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge